UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                      Case No.: 2:07-CV-13227

vs.                                       DISTRICT JUDGE. JOHN FEIKENS
                                            MAGISTRATE JUDGE STEVEN D. PEPE

ALDO RINALDO QUADRINI,
LOUISE ANNE QUADRINI,
    A/K/A/ LOUISE A. GILLETTE,

        Defendant(s).
_____/


**REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S MOTION TO STRIKE
AFFIRMATIVE DEFENSES AND DEFENDANT'S AMENDED ANSWER TO AMENDED COMPLAINT
(Dkt. # 7)**

**I.    Background and Factual Assertions:**

This civil action involves a suit brought by the United States of America, on behalf of the Social Security Administration ("SSA"), seeking damages, civil penalties, and recovery of wrongfully paid monies from Aldo Rinaldo Quadrini and Louise Anne Quadrini, also known as Louise A. Gillette, under the False Claims Act, 31 U.S.C. § 3729, and common law remedies, based upon false claims and statements made by both Aldo Quadrini and Louise Quadrini to obtain payment of Social Security Disability Benefits from February 1998 through March 2005.

On August 1, 2007, Plaintiff filed its initial Complaint (Dkt. # 1), and on August 28, 2007, filed an amended Complaint (Dkt. # 3) which included 6 counts: (1.) violation of False Claims Act – 31 U.S.C. § 3729(a)(1); (2.) violation of False Claims Act – 31 U.S.C. § 3729(a)(1); (3.) conspiracy; (4.) conversion; (5.) unjust enrichment; and (6.) fraud.

1

On October 1, 2007, Defendants filed an Answer to the Amended Complaint with the following affirmative defenses:

> 1. Plaintiff is precluded from pursuing this civil action against defendants based on Plaintiffs's consent to enter into an Agreement for Pretrial Diversion dated December 12, 2006, such that this action is barred by estoppel, res judicata or application of the Rooker-Feldman Doctrine, accord and satisfaction, laches, payment, release, waiver or such other legal theories that become apparent through further research and/or discovery.

(Dkt. # 4, p. 11).

On October 24, 2007, Plaintiff filed a Motion to Strike Affirmative Defenses due to an insufficient defense (Dkt. # 7). Pursuant to 28 U.S.C. §636(b)(1)(B), this motion was referred to the undersigned on October 28, 2007 (Dkt. # 8).

On December 6, 2007, this Court issued an opinion and order providing Defendants the opportunity to cure their pleading deficiencies before considering Plaintiff's Motion to strike or considering any judicially initiated sanctions under Rule 11(c) against defense counsel or Defendants (Dkt. # 13, p. 9).

On December 14, 2007, Defendants' filed an Amended Answer to Amended Complaint (Dkt. # 14), and an Amended Response to United States' Motion to Strike Affirmative Defenses (Dkt. # 15). Plaintiff filed a Supplemental Brief in Support of its motion to strike (Dkt. # 16).

Plaintiff's amended answer addresses the main shortcomings of their prior answer – a lack of factual specificity (Dkt. # 4). Defendants have now recalled their home address since February 2001, (Dkt. # 3, p. 6) as well as other facts alleged in the Complaint. Based on Defendants Amended Answer, this Court is able to determine that on December 20, 1994, Defendant Aldo Quadrini signed and filed with the SSA an Application for disability benefits claiming that on October 18, 1994, he became unable to work as of the date of his application

2

(Dkt. # 3, p. 4). On this application Plaintiff agreed to "notify the Social Security Administration if: I go to work whether as an employee or self-employed person." *Id.*

Along with this application, Plaintiff signed and filed with the SSA a Disability Report Form stating that he worked at MAGO Construction from September 1990 through the date of his injury, October 18, 2004. *Id.* Mr. Quadrini became entitled to social security benefits in April 1995. On August 26, 2004, Plaintiff signed an SSA form stating that "I have done no work since I filed for Social Security in 12/15/94." *Id.* at 5.

Yet, Plaintiff worked as a manager and served as an officer at MAGO Construction Company while collecting SSA Disability Insurance Benefits.[1] The record shows that Plaintiff ceased reporting earnings under his social security number at the time of his application for disability benefits. *Id.* Beginning in 1995 through 2005, Louise Quadrini reported earnings from MAGO which were, on average, greater than $36,000 per year under her social security number. *Id.* Both Aldo and Louise admitted that from 1995 until 2005, they received a vehicle, cell phones and a credit card for gas purchases from MAGO. *Id.*

On April 12, 1999, Louise Quadrini signed and filed a form entitled "Application for Child's Insurance Benefits – Life Claim," asking that benefits be paid to her as representative payee for benefit of Isabella Quadrini, a minor child, based on the claimed disability of Aldo Quadrini (Dkt. # 3, p. 4). Defendants admit that Aldo Quadrini received 90 checks, totaling $68,957.60, from SSA (the "Disability benefits overpayment") while Louise Quadrini received

---

[1] Defendants assert that they believed that "the value of benefits he was receiving was less than the threshold amount such that he was not necessarily ineligible for the benefits based on the Social Security Disability payments based on the value for services he realized while working at MAGO" (Dkt. # 14, p. 5).

3

73 checks totaling $31,097 (Dkt. # 3, p. 5-6)(the "Child's benefits overpayment"). Louise Quadrini denies that she was not entitled to these payments for the "reason that it is untrue" (Dkt. # 14, p. 4).

In his Agreement for Pretrial Diversion, Mr. Quadrini agreed to pay restitution of $68,957.60 to the Social Security Administration (Dkt. # 7, Ex. A, p. 3). A separate civil complaint was filed against Defendant Aldo Quadrini, Civ. 07-10823, based on the Pretrial Diversion restitution agreement over these Social Security overpayments, this case was assigned to Judge Feikens and the undersigned. When the current case was filed, it was assigned to Judge Anna Diggs Taylor and Magistrate Judge Sheer, but was reassigned to Judge Feikens and the undersigned because the prior civil matter was considered a companion case (Dkt. # 2)

**II     Legal Analysis:**

*A. Plaintiff's Motion to Strike Per Fed. R. Civ. P. 12(f):*

A "court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "[I]n order to succeed on a Rule 12(f) motion to strike surplus matter from an answer, the federal courts have established a standard under which it must be shown that the allegations being challenged are so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense." 5C WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1380 (2004). These motions are "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Quintana v. Baca*, 233 F.R.D. 562, 564 (C.D. Cal. 2003).

A three part test has been developed to determine whether a federal court should strike an

affirmative defense: "(1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge - in other words, if it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint, the matter must be stricken as legally insufficient." *Williams v. Provident Investment Counsel, Inc.*, 279 F.Supp.2d 894, 904-05 (N.D. Ohio 2003).

The Sixth Circuit has counseled that this remedy of striking defenses should be used sparingly. *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) ("[Striking a defense] is a drastic remedy to be resorted to only when required for the purposes of justice. The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy.") (internal citations omitted). "Motions to strike a defense as insufficient are not favored by the federal courts because of their somewhat dilatory and often harassing character. Thus, even when technically appropriate and well-founded, Rule 12(f) motions often are not granted in the absence of a showing of prejudice to the moving party." 5C WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1381, p. 421-22 (2004). *See also Ameriwood Industries International Corp. v. Arthur*, 961 F.Supp. 1078, 1083 (W.D. MI.1997) (motions to strike affirmative defenses under Rule 12(f) are addressed to the court's discretion, although they are generally disfavored.).

A motion to strike should be granted only where there is a clear showing that the challenged defense has no bearing on the subject matter and that permitting the defense to stand would prejudice the plaintiff. *Beattie v. CenturyTel, Inc.*, 234 F.R.D. 160, 174 (E.D. MI.2006). Yet, a Rule 12(f) motion may be appropriate when only legal implications of uncontroverted

facts are called into question. *See Owens v. UNUM Life Ins.* Co., 285 F.Supp.2d. 778 (D.C. Tex. 2003) (courts should be cautious in granting motions to strike affirmative defenses, however, determination of a defense's invalidity as a matter of law, at an early stage can be appropriate). An affirmative defense is insufficient "if, as a matter of law, the defense cannot succeed under any circumstances," and a motion to strike is appropriate "where it will eliminate spurious issues before trial and streamline the litigation." *Ameriwood*, 961 F.Supp. at. 1083. When a motion to Rule 12(f) motion to strike is granted, it is often with leave to amend. This is analogous to the practice under "Rule 12(b)(6) when a complaint is dismissed as insufficient." 5C WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1381, p. 431 (2004).

**III.   Legal Analysis:**

<u>a. Defendant Aldo Quadrini's *Res Judicata* Defense:</u>

Defendants' Amended Response revised their affirmative defenses with regard to Aldo Quadrini so that only the defense of *res judicata* remains (Dkt. # 15, p. 1).[2] In their Response brief, Defendants allege that the pretrial diversion and subsequent complaint and consent judgment entered into in case Civ. 07-10823 by Mr. Quadrini constituted a civil suit based upon the same facts raised in Plaintiff's present complaint (Dkt. # 15, p. 4). The Agreement for Pretrial Diversion entered into by Plaintiff and Aldo Quadrini provides that prosecution for federal program fraud would be deferred for 12 months, and if Defendant complied with the Agreement's terms "no prosecution for the offense(s) described above will be instituted in this district, and the charges against you, if any, will be dismissed" (Dkt. # 7, Ex. A, p. 2-3). Yet, the

---

[2] "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb ... ." U.S. CONST. AMEND. V.

government has not indicated that there were any prior criminal charges. There is no dispute that the facts forming the basis for that $68,957.60 restitution agreement are the same as those in the present case against Aldo Quadrini for his $68,957.60 in Disability benefits overpayments. Defendants asserts that "there is, therefore no prior criminal matter. There is, however, a prior civil matter" (Dkt. # 15, p. 4). It is for this reason, that Defendants argue that the $68,957.60 judgment in the prior civil restitution suit, Civ. 07-10823, for the 90 Disability benefits overpayments is *res judicata* and bars relitigation of his liability in the present complaint for additional liability for the same $68,957.60 in Disability benefits overpayments.

Plaintiff counters that Defendant Aldo Quadrini's *res judicata* defense must fail because the original complaint, the Agreement for Pretrial Diversion and the consent judgment do not involve the same legal basis as does their present complaint (Dkt. # 1). According to Plaintiff, the initial suit involved criminal procedure - a pretrial diversion based on violations of Federal Program Fraud - in resolution of federal criminal offenses whereas the present action seeks compensatory damages and penalties for civil violations of the False Claims Act. *Id*. at 1.

Thus, according to Plaintiff, its two complaints, while involving the same nucleus of operative facts, involve different causes of action. The pretrial diversion and consent judgment addressed violations of Federal Program Fraud, 18 U.S.C. § 641,[3] whereas the most recent

---

[3] 18 U.S.C. § 641 reads: "Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or
Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted--
Shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate, combining amounts from all the counts for which the defendant

complaint (Dkt. # 1) addresses violations of the False Claims Act, 31 U.S.C. § 3729.[4][5]

Claim preclusion "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Abbott v. Michigan* 474 F.3d 324 (6th Cir. 2007) (quoting *Adair v. State*, 470 Mich. 105, 680 N.W.2d 386, 396 (Mich. 2004)). Claim preclusion "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.* "[T]he burden of proving the applicability of the doctrine of *res judicata* is on the party asserting it." *Baraga County v. State Tax Comm'n*, 466 Mich. 264, 645 N.W.2d 13, 16 (Mich.2002). *See also Richards v. Tibaldi*, 272 Mich.App. 522 (Mich. App. 2006); *Estes v. Titus*, 273 Mich.App. 356, 731 N.W.2d 119 (Mich. App. 2006).

The first criteria for establishing *res judicata*, that there has been a final judgment on the merits, has been met because a consent judgment constitutes such a determination. "A consent judgment is a hybrid that is both a voluntary settlement agreement fully effective without judicial intervention, and a final judicial order that places the authority of the court behind the parties' compromise." *McCuiston v. Hoffa*, 202 Fed.Appx. 858, 862 (6th Cir. 2006) (internal quotes

---

is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both."

[4] 31 U.S.C. § 3729(a)(1) reads: "(a) Liability for certain acts.--Any person who-- (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval."

[5] *See also* 31 U.S.C. 3170(a) ... "If the Attorney General finds that a person has violated or is violating section 3729, the Attorney General may bring a civil action under this section against the person."

8

removed). "A consent judgment, which has been freely negotiated by the parties and has been approved by the court, has the full effect of final judgment for purposes of claim preclusion." *Blakely v. U.S.,* 276 F.3d 853 (6th Cir. 2002) (quoting *Bayou Fleet, Inc. v. Alexander*, 234 F.3d 852, 858 (5th Cir.2000)). *See* FEDPROC § 51:248 ("For claim preclusion purposes, consent judgments generally are as final, conclusive, and binding as judgments rendered after a fully adjudicated trial on the merits."). Consent decrees generally are given preclusive effect under the rules of claim preclusion, except when the consent decree contains an express reservation of rights which precludes the decree from being treated as a final judgment on the merits. *See also Arizona v. California*, 530 U.S. 392 (2000).

The second prong of the *res judicata* standard has also been met for Mr. Quadrini because the same parties (with the addition of Mrs. Quadrini) or their privies are involved in the present case. The government is correct that Mrs. Quadrini does not meet this standard.

The government argues that the third prong has not been met because the present civil claim was not neither litigated in the prior case nor could it have been litigated at that time. The core of its argument is:

> Res judicata does not apply here because the United States filed the original Complaint against Defendant Aldo Quadrini pursuant to a criminal matter, the Agreement for Pretrial Diversion. Defendants fail to recognize that such agreements resolve criminal matters and are rooted in criminal procedure.

(Dkt.# 17, Supplemental brief at p.7)

The government cites *United States v. Barnette*, 10 F.3d 1553, 1562 (11th Cir. 1994), which holds that it would be a "misapplication of the doctrine of res judicata" to hold that a prior criminal restitution order is *res judicata* for a civil action under another statute. The Eleventh

9

Circuit in *Barnette* expressed doubt that the United States could have brought a criminal and civil claims together under the aegis of a criminal proceeding noting that Congress in the Victim Witness Protection Act, 18 U.S.C. § 3664(j)(2), provided a mechanism by which civil claims were separate from and subsequent to criminal prosecution. *Id*. at 1560 (noting that civil actions for damages are by no means an unusual follow-up to criminal proceedings). Yet, *Barnette* clearly involved a restitution order in a criminal case. The Eleventh Circuit determined that for purposes of issue preclusion, not claim preclusion, the criminal case judge in his restitution order did not make a finding of fact as to the amount of the loss that was binding on the court in a later civil RICO case. Indeed, at the time of sentencing, the defendant had already been sued civilly in *Barnette*.[6]

While the government is correct that had they proceeded against Defendant Aldo Quadrini in a criminal action under 18 U.S.C. § 641, then upon conviction or plea it could have obtained in that criminal case an order of restitution under the Victim and Witness Protection Act,18 U.S.C.A. § 3663. Under *Barnette,* that restitution order would not be issue preclusive or claim preclusive for a later action under the False Claims Act, 31 U.S.C. §3729(a). Yet, it did not proceed that way. Rather it entered into a Agreement for Pretrial Diversion with a stipulated

---

[6] *United States v. Schaffner*, 771 F.2d 149 (6th Cir. 1985), held that a Agreement for Pretrial Diversion for a violation of 18 U.S.C. § 1501 did not bar a subsequent trial for violation of 18 U.S.C. § 1503. Schaffner knew the government was seeking to proceed against him under 18 U.S.C. § 1503 as well as 18 U.S.C. § 1501 when he entered into the pretrial diversion agreement that dismissed the information under 18 U.S.C. § 1501. In *Schaffner* there was a criminal information filed under 18 U.S.C. § 1501 that was dismissed upon satisfactory completion of the pretrial agreement period . The court held the later 18 U.S.C. § 1503 charge "was not multiplicitous and did not violate rules of double jeopardy, *res judicata* and collateral estoppel."

consent judgment to pay $68,957.60 restitution for the 90 Disability benefits overpayments. It filed a separate civil action, Civ. # 07-10823, to enter that consent judgment for restitution. It did not reserve in the Agreement for Pretrial Diversion a right to proceed under the False Claims Act, 31 U.S.C. §3729(a). While the government argues it could not have brought the False Claims Act claim in Civ. # 07-10823 it cites no legal bar to that action being brought against Aldo Quadrini in this Court at that time. This Court clearly had jurisdiction then as it does now and the alleged wrongdoing was fully know to the government when Civ. # 07-10823 was brought. While it may be the government's practice not to bring a False Claims Act claim when it bargains for an Agreement for Pretrial Diversion, that is a choice, not a legal disability.[7]

The third prong for establishing *res judicata* provides two ways by which a claim could be precluded: (1) it was litigated in a prior suit or (2) it could have been litigated in a prior suit. *Abbott*, 474 F.3d. at 331. As the *Abbott* court noted claim preclusion "bars not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." Claim preclusion principles do not apply 'where the party against whom an earlier decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court.' "*Fellowship of Christ Church v. Thorburn,* 758 F.2d 1140, 1144 (6th Cir.1985) (quoting *Allen v. McCurry,* 449 U.S. 90, 95 (1980)). Yet, there was no impediment to the government bringing its False Claims Act claim in Civ. # 07-10823 instead of waiting until filing this case. The government has not stated

---

[7] If the government wishes to preserve its False Claims Act claim, it could surely put that reservation in the Agreement for Pretrial Diversion, and thus give the alleged wrongdoer notice of potential future civil liability.

any reason it could not have brought the False Claims Act in the earlier case. Because the False Claims Act involves the same parties and a claim over the same 90 Disability benefits overpayment checks as did the earlier restitution suit, it clearly was a claim "arising from the same transaction that the parties." The government chose not to bring the False Claims Act in Civ.# 07-10823, which is a companion case to the present suit. It chose not to reserve that right in its Agreement for Pretrial Diversion or otherwise inform Defendant Aldo Quadrini of its intent to proceed later under the False Claims Act. Final judgment was entered in case Civ. # 07-10823. Unlike the defendant in *Barnette* who was fully aware of the government's other civil claims against him there is no showing that Aldo Quadrini was similarly aware he could face additional liability.

Had the government filed a criminal information or obtained an indictment for violation of 18 U.S.C. § 641 and after conviction or plea obtained $68,957.60 in restitution under the Victim and Witness Protection Act as part of the criminal case, then *Barnette* would apply and the government could proceed under the False Claims Act. But that is not the way the government chose to proceed.

What the government did was closer to the case of *United States v. Temple,* 299 F.2d 30, 31 (7th Cir. 1962), cited by Defendants. Defendant in *Temple* had used false statements to obtain certain government loans for which promissory notes were signed. After default on the loans the Reconstruction Finance Corporation sued on the several promissory notes executed by defendant and obtained a default judgment on the notes. The government later sought to bring a claim under an earlier version of the False Claims Act. The defendant argued that because the government previously obtained a judgment on the loans in a common law suit based on a

default in the payment of promissory notes the government was precluded by *res judicata* from bringing the False Claims Act action. The district court ruled that the prior contract adjudication on the notes did not bar the subsequent statutory tort action under the False Claims Act because fraud is the essential element under the False Claims Act while the former suit was in contract on the notes. Thus, the Court reasoned, the False Claims Act action could be pursued in spite of a prior judgment because the two remedies are not inconsistent. The Seventh Circuit reversed, holding that the former contract adjudication on the notes bars the False Claims Act action. *Id.* 299 F.2d at 31.

> When a plaintiff has a single cause of action but is entitled to alternative remedies and he obtains a judgment for the payment of money in an action to enforce one of the remedies, his cause of action is merged in the judgment. The doctrine of merger under the rules of res judicata prevents the maintenance of a second action to pursue the alternative remedy. RESTATEMENT, JUDGMENTS § 64. This doctrine applies when a plaintiff has alternative remedies to recover damages to vindicate a wrong by bringing either a tort or contract action. 50 C.J.S. JUDGMENTS § 654.
>
> The question presented here is whether the government has a single cause of action for which it is entitled to pursue either of two remedies but not both.
>
> **The promissory notes on which the government sued and obtained judgment in the prior action represent the same compensatory damages to which it might be entitled in an action under Section 231 based on the false, fictitious and fraudulent statements.** This is so because the promissory notes represent the loans which were granted by reason of the false and fraudulent statements made by defendant. Whether the government obtains these compensatory damages in an action on the notes or in an action sounding in tort, the compensatory damages to which it might be entitled are the same. As was said in *Ohio Fuel Gas Co. v. City of Mt. Vernon,* 37 Ohio App. 159, 174 N.E. 260, 263:
>
>> "A party cannot by varying the form of action or adopting a different method of presenting his case escape the operation of the principle that one and the same causes of action shall not be twice litigated. Where either of two remedies is equally available to vindicate the same right, the judgment in an action employing one of them will bar a resort to the other." (Quoting 2 FREEMAN,

13

JUDGMENTS (5 Ed.), § 684)

*Id.* 299 F.2d at 32 (emphasis supplied).

As in the *Temple* case, in the present case it can also be said that, "[t]he [$68,957.60 stipulated restitution for the 90 Disability benefits overpayments] on which the government sued and obtained judgment in the prior action [Civ. # 07-10823] represent the same [$68,957.60 ] compensatory damages to which it might be entitled in an action under [the False Claims Act] based on the false, fictitious and fraudulent statements [of Aldo Quadrini ] ."

Because the government did not reserve in the Agreement for Pretrial Diversion nor assert the False Claims Act in its prior civil restitution action, Defendant Aldo Quadrini can assert an affirmative defense of *res judicata*. Accordingly, Defendant, Aldo Quadrini's affirmative defense of *res judicata* should not be stricken.

  b.  *Defendant, Louise Quadrini's, Defense of Non-joinder:*

In their Amended Answer to Plaintiff's Amended Complaint, Defendants argue that Ms. Quadrini reserves the right to "raise non-joinder as an affirmative defense" given that her liability is premised upon the false claims made by Mr. Quadrini in his consent judgment (Dkt. # 14, p. 10).

Fed. R. Civ. P. 19(a) provides that:

> a person who is subject to service of process and whose joinder
> will not deprive the court of jurisdiction over the subject matter of
> the action shall be joined as a party in the action if (1) in the
> person's absence complete relief cannot be accorded among those
> already parties, or (2) the person claims an interest relating to the
> subject of the action and is so situated that the disposition of the
> action in the person's absence may (I) as a practical matter impair

> or impede the person's ability to protect that interest or (ii) leave
> any of the person already parties subject to a substantial risk of
> incurring double, multiple or otherwise inconsistent obligations by
> reason of the claimed interest.

Fed. R. Civ. P. 19(a)(1),(2)(I-ii).

Plaintiff's original complaint addressed Mr. Quadrini's restitution debt totaling $68,957.60 (Dkt. # 7, Ex. A, p. 3). Neither the Agreement for Pretrial Diversion nor the consent judgment (Dkt. # 7, Ex. A & B), reference Mrs. Quadrini or any facts involving her. The parties have stipulated that Mrs. Quadrini filed of an Application for Child's Insurance Benefits – Life Claim, and that she cashed 73 SSA checks, totaling $31,097 (Dkt. # 3, p. 4, 6, Dkt. # 14, p. 3-4). Neither of these matters, which constitute much of Plaintiff's claims against Mrs. Quadrini, were raised in the original complaint.

The claims against Mrs. Quadrini, while related, are separate and distinct from those made against her husband in the consent judgment. Given this, there appears to be no basis for Defendants' fear that Plaintiff may "rely on said Consent Judgment to establish an element of the action against Louise Quadrini" (Dkt. # 14, p. 10).

If Mrs. Quadrini had been an necessary and indispensable party in the prior suit, such a claim would have been appropriately raised by Defendants prior to entry of the consent judgment. Regardless, the present suit is separate and distinct from the prior litigation, and there is no basis to assert that Mrs. Quadrini should have be made a party to that prior suit.

### III. RECOMMENDATION

For the reasons noted above, **IT IS RECOMMENDED** that Plaintiff's motion to strike

Defendant Aldo Quadrini's affirmative defense of *res judicata* **BE DENIED**. It is **IT IS FURTHER RECOMMENDED** that Plaintiff's motion to strike Defendant Louise Quadrini's affirmative defense of non-joinder **BE GRANTED**.

The parties to this action may object to and seek review of this **REPORT AND RECOMMENDATION**, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Date: January 31, 2008                   s/Steven D. Pepe
Ann Arbor, Michigan                   United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing ***Report and Recommendation*** was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 31, 2008.

 

s/ Alissa Greer

Case Manager to Magistrate

Judge Steven D. Pepe

(734) 741-2298